GRACE Y. HOROUPIAN (SBN 180337)
ghoroupian@fisherphillips.com
KRISTINA NOEL BUAN (SBN 311661)
kbuan@fisherphillips.com
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

Attorneys for Defendants
EVERGREEN ALLIANCE GOLF LIMITED, L.P.
and ARCIS GOLF LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA CONANT, individually, and on behalf of other similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>EVERGREEN ALLIANCE GOLF LIMITED, L.P.; ARCIS GOLF LLC; and DOES 1 through 25, inclusive,<br>Defendant. | Case No.:<br><br>*[Removed from Alameda County Superior Court, Case No. 25CV146183]*<br><br>**DEFENDANTS EVERGREEN ALLIANCE GOLF LIMITED, L.P., AND ARCIS GOLF LLC'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332(a)(1), 1441, 1446 (DIVERSITY)**<br><br>*[Filed Concurrently with Certification of Conflicts and Interested Entities and Persons and Corporate Disclosure Statement; Declaration of Kristina Noel Buan; and Declaration of Scott Siddons]*<br><br>Complaint Filed: September 29, 2025<br>Trial Date: Not Set |

TO THE CLERK OF THE COURT OF THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF LAURA CONANT AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, through this notice ("Notice"), Defendants EVERGREEN ALLIANCE GOLF LIMITED, L.P. ("Evergreen") and ARCIS GOLF LLC ("Arcis Golf") (hereinafter collectively "Defendants") effect the removal of this action from the Superior Court of the State of California for the County of Alameda to the United States District Court for the Northern District of California. Defendants base this removal on 28 U.S.C. sections 1332 (a) (Diversity Jurisdiction), 1441(b), and 1446, as follows:

## I. <u>STATEMENT OF JURISDICTION</u>

1. This Court has original jurisdiction over this action under the diversity of citizenship statute: 28 U.S.C. § 1332(a). In relevant part, the diversity statute grants district courts original jurisdiction over civil actions in which the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. As set forth below, this case meets all of the diversity statute's requirements for removal and is timely and properly removed by the filing of this Notice.

## II. <u>PLEADINGS, PROCESS, AND ORDERS</u>

2. On September 29, 2025, Plaintiff filed a Class Action Complaint in the Alameda Superior Court, entitled *Laura Conant v. Evergreen Alliance Golf Limited, L.P. et al.*, Case No. 25CV146183 ("Complaint"). The Complaint alleges causes of action for (1) Violation of Cal. Labor Code §§ 1194, 1197, and 1197.1 (Minimum wages), (2) Violation of Cal. Labor Code §§ 510 and 1198 (Unpaid Overtime); (3) Violation of Cal. Labor Code §§ 226.7 and 512 (a) (Meal Break Violations); (4) Violation of Cal. Labor Code § 226.7 (Rest Break Violations); (5) Violation of Cal. Labor Code §§ 204 and 210 (Wages Not Timely Paid During Employment); (6) Violation of Cal. Labor Code §§ 226(a) (Wage Statement Violations).; (7) Violation of Cal. Labor Code §§ 201, 202, and 203 (Untimely Final Wages); (8) Violation of Cal. Labor Code §§ 2800 and 2802 (Failure to Reimburse Necessary Business Expenses); and (9) Violation of Cal. Business & Professions

Code §§ 17200 *, et seq.* Declaration of Kristina Noel Buan ("Buan Decl."), ¶ 3, Exh. B.

3. In compliance with 28. U.S.C. section 1446(a), attached to this Notice as exhibits are all process, pleadings, and orders filed in this action. On October 27, 2025, Defendants were served with the Summons, Class Action Complaint, and other pleadings. Declaration of Kristina Noel Buan ("Buan Decl."), ¶¶ 2-3 & Exhs. A-B.

4. On November 26, 2025, Defendants filed their Answer with general denial and affirmative defenses to the Complaint in Alameda County Superior Court. Buan Decl., ¶4, Exh. C.

5. Pursuant to 28 U.S.C. § 1446(d), Exhibits A & B constitute all process, pleadings, and orders filed in the State Court Action. Buan Decl. ¶ 5. To Defendants' knowledge, no other process, pleadings, or orders related to this case have been filed or served by any party in the State Court Action. *Id.*

6. To Defendants' knowledge, no proceedings related hereto have been heard in the State Court Action and no other parties have been named or served with the Summons and Complaint in the State Court Action. *Id.* at ¶¶ 5-6.

## III. <u>TIMELINESS OF REMOVAL</u>

7. This Notice of Removal is timely filed as it is filed within thirty (30) days of October 27, 2025, the date of service of the Summons and Complaint, and within one year from the commencement of the State Court Action. *See* 28 U.S.C. § 1446(b); *see Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (holding that the 30-day removal period begins to run upon service of the summons and complaint).

## IV. <u>DIVERSITY JURISDICTION</u>

8. This Court has subject matter jurisdiction in this case based upon diversity jurisdiction. 28 U.S.C. § 1332. Diversity jurisdiction exists in a civil matter when the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different states. *Id.* § 1332(a)(1). Both of the requirements for subject matter jurisdiction based on diversity jurisdiction are met in this case and, therefore, this case is removable to this Court.

9. The United States Supreme Court has held that, under 28 U.S.C. section 1446(a), a

defendant seeking to remove a case to federal court need only file a "notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014). The Court further held this language "tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure" and that "[a] statement short and plain need not contain evidentiary submissions." *Id.* at 551, 553.

## V. DIVERSITY OF CITIZENSHIP

10. For removal purposes, citizenship is measured both when the action is filed and removed. *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

11. Plaintiff is a Citizen of California. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

12. At the time Plaintiff commenced the State Court Action, and at the time of removal, Plaintiff was a citizen of the State of California. Plaintiff alleges in the Complaint that she "is and was an individual residing in the State of California." *See* Exh. B, ¶ 9.; *see also Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (residency can create a rebuttable presumption of domicile supporting diversity of citizenship); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Smith v. Simmons*, No. 1:05-CV-01187-OWW-GSA, 2008 WL 744709, at *7 (E.D. Cal. Mar. 18, 2008) (place of residence provides "*prima facie*" case of domicile). Thus, Plaintiff is a citizen of California for diversity jurisdiction purposes.

13. Defendants Are Not Citizens of California. For purposes of determining diversity jurisdiction, a limited liability company is a citizen of every state in which its members are citizens. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Similarly, a

limited partnership is a citizen of every state in which its general and limited partners are citizens. *Id.*; *see also Carden v. Arkoma Assoc.*, 494 U.S. 185, 192-96 (1990).

14. Evergreen Alliance Golf Limited, L.P. was, at the time of the filing of this action, and still is, a Delaware limited partnership having two partners: (1) Premier Golf EAGL LP, LLC as its limited partner; and (2) Premier Golf EAGL GP, LLC as its general partner. Declaration of Scott Siddons ("Siddons Decl.") ¶ 2. Evergreen Alliance Golf Limited, L.P.'s principal place of business is in Texas. Siddons Decl., ¶ 2.

15. Premier Golf EAGL LP, LLC was, at the time of the filing of this action, and still is, a Delaware limited liability company with its principal place of business in Delaware. Premier Golf EAGL LP, LLC is its sole member. Siddons Decl., ¶ 3. Thus, Premier Golf EAGL LP, LLC is a citizen of the State of Delaware.

16. Accordingly, Evergreen Alliance Golf Limited, L.P. and each of its partners are citizens of the state of Delaware. Defendant Evergreen is not, and was not at the time Plaintiff commenced this action, a citizen of California. Therefore, Plaintiff is diverse in citizenship from Defendant Evergreen. *Id.*, ¶¶ 2-4.

17. For diversity purposes, a corporation shall be deemed a citizen of any State in which it has been incorporated and of the State where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) (citing the statute). As explained by the United States Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), the phrase principal place of business in 28 U.S.C. § 1332(c)(1) refers to the place where a corporation's high-level officers direct, control and coordinate the corporation's activities, i.e., its nerve center, which will typically be found at its corporate headquarters. *Hertz Corp.*, 559 U.S. at 78. Arcis Golf was, at the time the Complaint was filed, and still is, as of the filing of this removal, incorporated in the State of Delaware. Siddons Decl., ¶ 5. Arcis Golf's principal place of business was, at the time of the filing of the Complaint, and still is, as of the filing of this removal, located at 8343 Douglas Avenue, Suite 200, Dalla, TX 75225. *See* id. For the purposes of federal diversity jurisdiction, Arcis Golf is a citizen of the State of Delaware and Texas. Arcis Golf is not a citizen of the State of California and therefore is also diverse in citizenship from Plaintiff

18. Doe Defendants Are Disregarded For Diversity. The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal. 28 U.S.C. § 1441(b); *Newcomb v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998); *see also Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980). Accordingly, since neither Defendant is citizen of the forum state, *i.e.*, California, complete diversity of citizenship exists in this matter for purposes of 28 U.S.C. § 1332. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005).

## VI. AMOUNT IN CONTROVERSY

**19.** Defendants only has to show by preponderance of the evidence that the amount in controversy exceeds $75,000. The Federal Court's Jurisdiction and Venue Clarification Act of 2011 ("JVCA"), which applies to state and federal lawsuits commenced on or after January 6, 2012, defines the standard for showing the amount in controversy. Pub. L. 112-63, Title II, § 205.

20. Under the JVCA, Congress clarified that the preponderance of the evidence standard applies to removals under 28 U.S.C. § 1332(a). See H.R. Rep. 112-10 at 16 ("defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met"). 28 U.S.C. § 1446(c)(2)(A) provides, in relevant part, that "the notice of removal may assert the amount in controversy if the initial pleading seeks. . . a money judgment, but the State practice. . . permits recovery of damages in excess of the amount demanded." Under these circumstances, "removal of the action is proper on the basis of an amount in controversy.. . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)," or $75,000. 28 U.S.C. § 1446(c)(2)(B). Accordingly, a removing defendant must demonstrate that the amount in controversy is more than $75,000 by a preponderance of the evidence, not to a legal certainty.

21. The United States Supreme Court held that, "as specified in § 1446(a), a defendant's notice of removal need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554 (emphasis added). The Ninth Circuit has also rejected application of the legal certainty standard for removals. See Rodriguez v. AT&T Mobility Servs. LLC, 728 F.3d 975, 981 (9th Cir. Aug. 27, 2013) ("A defendant seeking removal. . . must

demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum").

22. To meet this relatively low burden of production regarding the amount in controversy, a defendant may rely on plaintiff's allegations, which are assumed to be true, and provide supplementary facts or numbers upon which the amount in controversy can reasonably be calculated. *See Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("In addition to the contents of the removal petition, the court considers 'summary- judgment-type evidence relevant to the amount in controversy at the time of removal,' such as affidavits or declarations"); *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (allowing the use of "Defendant's own numbers" for "purposes of analyzing the amount in controversy"). Such calculations are more than sufficient to establish the amount in controversy. *See Rippee*, 408 F. Supp. 2d at 986 ("The amount of overtime claims in controversy can. . . be calculated using a combination of Defendant's own numbers and Plaintiff's allegations").

23. As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition). The amount in controversy is "simply an estimate of the total amount in dispute . . . [and] [i]n that sense, the amount in controversy reflects the maximum recovery [a] plaintiff could reasonably recover" on a complaint at the time of removal. *See Arias v. Residence Inn, 936 F.3d 920, 927 (9th Cir. 2019)*. Moreover, "[a]n assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that the damages might be less than the requisite amount." *Id.* (quotation marks omitted).

24. It is permissible for Defendant, when the Complaint does not provide specific facts to rely on reasonably assumed violation rates based upon the Complaint when determining the amount in controversy. *See* Arias, 936 F.3d at 927. Defendant may rely on "a chain of reasoning that includes assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d at 1199. Defendant does not need to "provide evidence proving the assumptions correct." *Arias,* 936 F.3d at 927. Instead, "assumptions made part of the defendant's chain of reasoning need not be proven; they instead must

only have 'some reasonable ground underlying them.'" *Id.* (citation omitted.)

25. While Defendants deny any and all liability to Plaintiff, based on a conservative good faith estimate of the value of the alleged damages in this action, the amount in controversy in this case exceeds $75,000, exclusive of interest and costs.

a. Minimum Wages

26. Plaintiff began working for Evergreen on or around January 2018 and is still a current employee at Evergreen. Siddons Decl., ¶ 7. The duration of Plaintiff's employment with Defendant, taking into account the applicable statute of limitations, starting from four years prior to the date of filing of the Complaint (i.e. September 29, 2021) to the present spans approximately 217 weeks.

27. The Complaint alleges that Defendants failed to pay Plaintiff at least minimum wages for all hours worked based on the off the clock allegations asserted in the Complaint. *See* Ex. B, ¶¶ 34-39.

28. Here, the "[C]ourts in this district have found an assumption of one hour of unpaid minimum wages per employee per workweek ... to be reasonable ... when a plaintiff alleges a policy or practice on the part of defendants." *Demaria, 2023 WL 6390151*, at *6; *see also Cabrera v. S. Valley Almond Co.*, LLC, No. 1:21-cv-00748-AWI-JLT, 2021 WL 5937585 (E.D. Cal. Dec. 16, 2021) at *8 (accepting the defendant's assumption of one hour of unpaid minimum wages per week as consistent with allegations in the complaint that the Labor Code violations at issue are due to "policies and/or practices" on the part of the defendants). *Serrieh v. Jill Acquisition LLC*, 707 F. Supp. 3d 968, 979 (E.D. Cal. 2023)

29. Under California Labor Code section 1194.2, an employee who receives less than the minimum wage can recover liquidated damages in the amount of the unpaid minimum wage plus interest. Actions to recover such damages are subject to the same statute of limitations as the action for wages from which the liquidated damages arise. Cal. Labor § 1194.2(a).

30. Pursuant to Labor Code § 1194.2, Plaintiff also seeks to recover "liquidated damages" in amounts equal to the wages unlawfully unpaid and interest thereon. (Complaint. ¶79.) Therefore, the amount of unpaid minimum wages is multiplied by two to include liquidated

damages in calculating the amount in controversy.

31. The Complaint alleges that Plaintiff is entitled to recover unpaid wages, including general and special damages. See Ex. B, Prayer for Relief ¶ 6. The Complaint also seeks to recover statutory wage penalties, and liquidated damages pursuant to California Labor Code section 1194.2. Id. ¶¶7, 10. The minimum wage during 2021 applicable to Plaintiff was $14.00 per hour.1 Plaintiff's claims for unpaid minimum wages and liquidated damages pursuant to California Labor Code sections 1194 and 1194.2 place at least **$6,076** in controversy, calculated as follows:

i. For unpaid minimum wages: $14.00 x 1 hours per week x 217 weeks = $3,038.

ii. For liquidated damages for unpaid minimum wages: $6,076 x 1 = $3,038.

b. Unpaid Overtime

32. That Complaint alleges that Plaintiff "regularly worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, in excess of forty (40) hours in a week, and/or in excess of seven (7) consecutive days in a workweek." Exh. B at ¶ 45. Plaintiff further alleges that Defendants did not accurately record Plaintiff's time and failed to pay "all overtime wages owed to Plaintiff" because of "total of the off-the-clock work," and/or "mischaracteri[zation] overtime as straight time," or when Defendants refused to authorize overtime necessary to complete work," and/or "when Defendants failed to include all required wages and renumeration when calculating setting the overtime rate." *Id.* Plaintiff further alleges that this was intentional and willful. *Id.*

33. Plaintiff's allegations support a 100% violation rate and the assumption that at least 2 **overtime** wage violation occurred for each week that Plaintiff worked. *See e.g., Lopez*, 427 F. Supp. 3d at p. 1236; *Ramirez*, 2019 WL 2897902, at *4; *Vikram*, 2017 WL 4457575, at *4; *Muniz*, 2007 WL 1302504, at *4; *see also Bryan v. Wal-Mart Stores, Inc.*, 2009 WL 440485, at *2 (N.D. Cal. Feb. 23, 2009) (denying remand where "Defendants estimate[d] that at least 500 individuals were required to work 2.5 hours of **overtime** per week"); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, No. 19-cv-1675-GPC-BLM, 2019 WL 5677846, at *4 (S.D. Cal. Nov. 1, 2019) (denying remand

[1] https://www.dir.ca.gov/dlse/FAQ_MinimumWage.htm

in part because assumption of two hours unpaid **overtime** per workweek was reasonable when plaintiff alleged "pattern and practice").

34. Plaintiff began working for Evergreen on or around January 2018 and is still a current employee at Evergreen. Siddons Decl., ¶ 7. The duration of Plaintiff's employment with Defendant, taking into account the applicable statute of limitations, starting from four years prior to the date of filing of the Complaint (i.e. September 29, 2021) to the present spans approximately 217 weeks. As alleged in the Complaint, Plaintiff regularly worked in excess of eight hours, in excess of twelve hours, in excess of forty hours in a week or in excess of seven consecutive days in a workweek. Exh. B. at ¶ 45. Using her initial hourly wage in 2021, Plaintiff's claim for unpaid overtime wages pursuant to California Labor Code sections 510 and 1194 place at least **$12,206.25** in controversy, calculated at $15.00 per hour x 1.5 x 2.5 hours per week x 217 weeks = $12,206.25. Siddons Decl., ¶ 7. This does not take into account the fact that Plaintiff currently makes approximately $18.50 per hour and is a current employee that will continue (per her allegations) due to the fact that Defendants have a "policy and practice of failing to pay overtime wages to Plaintiff and the other Class Members for all overtime hours worked." *See* Exh. B at ¶ 45 and Siddons Decl., ¶ 7.

c. <u>Meal Break and Rest Break Violations</u>

35. The Complaint alleges that Defendants intentionally and willfully required Plaintiff to "work during meal periods" and "failed to compensate Plaintiff and other Class Members for "work performed during meal periods," and "failed to pay Plaintiff and other Class Members all meal period premiums" and "failed to include all required wages and remuneration" when calculating regular rates of pay for meal period premiums" "failed to provide Plaintiff" with "full, timely thirty (30) minute uninterrupted meal period[s]." *See* Exh. B at ¶¶ 53-57.

36. Similarly, the Complaint also alleges that Defendants willfully required Plaintiff to "work during what should have been their rest periods" and made "Plaintiff work through rest periods, took late rest periods, too interrupted rest periods, and/or took short rest periods, if at all." *See* Exh. B at ¶¶ 65-66. Further, Plaintiff alleges that "Defendants had no policy or practice to pay a premium when rest periods were missed, short, late and/or interrupted" and "failed to pay Plaintiff

and other Class Members the full rest period premium due to them" and "failed to include all required wages and remuneration" when calculating regular rates of pay for rest period premiums" *See* Exh. B at ¶¶ 68-69.

37. Here, Plaintiff's allegations support a 100% violation rate. "A 100% violation rate is proper when the plaintiff's complaint alleges that the defendant always engages in labor violations."; *Feltzs v. Cox Communs. Cal., LLC, No.* SACV192002, 2020 WL 133687, at *4 (C.D. Cal. Jan. 13, 2020) (finding allegations of "consistently" violating meal periods supported a 100% rate); *Giannini v. Nw. Mut. Life Ins. Co.,* No. C 12-77 CW, 2012 WL 1535196, at *3 (N.D. Cal. 2012) (applying 100% "violation rate" based on allegations that defendant "routinely" failed to provide meal periods*); Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, *3-4 (E.D. Cal. 2011) (finding defendant's calculation of potential missed meal period damages at 100% of the shifts was appropriate where plaintiff alleged that class members were routinely denied meal periods or were not compensated for meal periods.).

38. Even though Defendants could have relied on a 100% violation rate, they conservatively applied a 60% violation rate during the Relevant Period -- meaning for every week Plaintiff potentially worked, Defendant assumed 3 meal break violations. See, *Sanchez v. Abbott Labs.*, No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, at *4-5 (E.D. Cal. Jun. 30, 2021) (finding a 60% violation rate for meal break claims to be appropriate based on the complaint's "pattern and practice" allegation that resulted in unpaid meal and rest period premiums to some "but not all" class members). For each violation, Defendants applied a one-hour premium wage amount equal to the minimum wage for the relevant years.

39. Plaintiff regularly worked eight or more hours per day through her employment as alleged in her Complaint. Exh. B. at ¶ 45. Plaintiff's meal and rest period claims conservatively place at least **$19,530** in controversy, calculated as follows: ($15 x 3 meal periods per week x 217 weeks) + ($15 x 3 rest periods per week x 217 weeks) = $19,530. This again does not take into account the fact that Plaintiff currently makes approximately $18.50 per hour and is a current employee that will continue (per her allegations) due to the fact that Defendants have a" policy and practice" of failing to provide meal or rest breaks and/or pay the appropriate meal and rest period

premiums.

d. Wages Not Timely Paid During Employment

40. Labor Code Section 210 allows for recovery of statutory damages for a violation of Section 204 's timing-of-pay requirements in the amount of $100 per pay period and $200 for any willful violation, plus 25% of the amount withheld. Labor Code section 204 claims statutory penalties have a one-year statute of limitations. See Code Civ. Proc. § 340(a). Thus, the applicable statute of limitations for this claim is from September 29, 2024, to present.

41. Plaintiff alleges that Defendants "intentionally and willfully failed to timely pay Plaintiff and the other Class Members all wages due to them within the period permissible under California Labor Code section 204" as a result of violations for "failure to pay overtime, failure to pay minimum wages, meal break violations, and rest break violations." Exh. B. ¶ 74.

42. Because Plaintiff's section 204 claim is derivative of her claims for failing to timely pay all overtime and minimum wages, meal period premiums, and rest period premiums he contends were due, it is reasonable to assume a 100% violation rate for his section 204 claim. *Wicker v. ASC Profiles LLC*, No. 2:19-CV-02443-TLN-KJN, 2021 WL 1187271, at *4 (E.D. Cal. Mar. 30, 2021) ("[B]ecause it is more likely than not that putative class members each suffered one meal and one rest break violation per week, then Defendants' 100 percent wage statement violation rate against each terminated class member is reasonably supported by the evidence.").

43. Because Plaintiff alleges "willful" failures to pay the underlying wages when due the heightened $200 penalty under Labor Code section 210(a)(2) applies. Thus, here conservatively this would amount to approximately 30 pay periods. As such, Plaintiff has placed at least **$6,000** (30 * $200) in controversy in connection with her section 204 claim, which only increases because she is a current employee.

e. Wage Statement Violations

44. The Complaint alleges that Defendants failed to provide Plaintiff with "complete and accurate wage statements" due to the "failure to state all hours worked, the failure to state the actual gross wages earned, the failure to include meal and rest break premiums, and the failure to include correct rates of pay." Exh. B. at ¶¶ 76-81.

45. California Labor Code section 226(e)(1) authorizes a plaintiff to recover "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." The statute of limitations for the penalty claim under Section 226(e) is one year. See Cal. Code of Civ. Proc. § 340(a).

46. The applicable statute of limitations for this claim is from September 29, 2024, to present. Plaintiff's employer has issued at least 30 wage statements during this period of time. Thus, Plaintiff's statutory penalties places at least **$2,950** in controversy, calculated as follows ($50 x 1 initial pay periods) + (100 x 29 subsequent pay periods). However, the amount is likely to reach the maximum penalty of $4,000 because Plaintiff is a current employee and in five months, Plaintiff will likely have received additional wage statements.

f. Untimely Final Wages

47. Plaintiff alleges that "at the time the Plaintiff and the other Class Members employment with Defendants ended, Defendants knowingly and willfully failed to pay them all wages owed to them pursuant to California Labor Code sections 201 and 202, including, without limitation, overtime wages, minimum wages, meal period premium wages, and rest period wages, and all wages due to Plaintiff and Class Members as they became due." Exh. B, at ¶¶ 82-86.

48. Labor Code section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonwork days," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998). Because the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made." Therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained un-paid up to a total of 30 days." *Id.* at 493.

49. While Plaintiff is a current employee, Plaintiff's own complaint alleges the possibility that her employment with Defendant will end. At that time, Plaintiff would be entitled to recover waiting time penalties. At the very minimum, because Plaintiff's most recent hourly rate is $18.50 and using eight (8) hours a day as Plaintiff's regular work day (even though she alleges

she worked in excess of eight (8) hours a day), Plaintiff's waiting time penalty claim places at least **$4,440** in controversy, calculated as $18.50 X 8 hours per day X 30 days = $4,440.

g. Failure to Reimburse Necessary Business Expenses

50. Plaintiff contends Defendants failed to reimburse Plaintiff and the other class members for all necessary business-related expenses and costs. Exh. B, ¶¶ 88-90

51. California Labor Code section 2802(a) states that an employer shall indemnify an employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of the employee's duties. Like unpaid minimum wages, overtime wages, and premium wages, business expenses are recoverable as restitution under California Business & Professions Code section 17200. *See Espejo v. The Copley Press, Inc.*, 13 Cal. App. 5th 329, 367 (2017) (citing *Cortez v. Purolater Air Filtration Products Co.*, 23 Cal. 4th 163 (2000)); *see also Harris v. Best Buy Stores, L.P.*, 2016 WL 4073327, at *10 (N.D. Cal. 2016).

52. Plaintiff does not have any specific allegations as to what Plaintiff seeks reimbursements for, however, there is additional value to this claim especially to the extent Plaintiff alleges any recurring expense that she alleges she incurred throughout her entire employment.

h. Violation of California Business & Professions Code §§ 17200, *et seq.*

53. Plaintiff's ninth cause of action seek restitution damages for violation of Business & Professions Code Section 17200. In this regard, Plaintiff alleges that policies and practices of requiring employees to work overtime without paying them proper compensation, requiring employees to work through their meal and rest periods without proper compensation and failing to pay minimum wages and timely pay, and violations of 2802, 1174(d), 226(a) and 2800 violate various labor codes that constitute unlawful business acts and practices. Exh. B. ¶¶ 92-96.

54. Plaintiff's remaining claims and her attorneys' fees exceed the amount in s requirement; thus it is not necessary to quantify Plaintiff's § 17200 claim. However, it is noteworthy that this claim adds to the amount in controversy.

i. Attorney's Fees

55. Plaintiff also seeks to recover an unspecified amount of attorneys' fees. *See generally* Exh. B. The Ninth Circuit held that where an award of attorneys' fees is authorized by

statute, a court "must" recognize these fees in the amount in controversy. See, e.g., *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."); *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018) (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016)) ("The amount in controversy may include 'damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes.' "). "A defendant does 'not need to prove to a legal certainty' that a plaintiff will be awarded the proffered attorneys' fees in the removal notice." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (quoting *Dart Cherokee*, 574 U.S. at 88).

56. Moreover, attorneys' fees are not limited to the amount incurred as of the time of removal. *Fritsch*, 899 F.3d at 795 (holding that future attorneys' fees authorized by statute to a prevailing plaintiff must be included in the amount in controversy calculation). In *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002), the court held that "[attorneys' fees] necessarily accrue until the action is resolved," such that "the Ninth Circuit [in *Galt G/S v. JSS Scandanavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998] must have anticipated that district courts would project fees beyond removal."

57. The amount of attorneys' fees placed in controversy is the total amount of fees that will likely accrue during the course of litigation. *Lippold v. Godiva Chocolatier, Inc.*, No. C 10--00421, 2010 WL 1526441, at *3--4 (N.D. Cal. Apr. 15, 2010) ("a reasonable estimate of attorneys' fees likely to be expended" should be included in calculating the amount in controversy); *Swans v. Fieldworks, LLC, No.* 222CV07250SPGMRW, 2023 WL 196918, at *2--3 (C.D. Cal. Jan. 17, 2023) ("Defendant has proved beyond a preponderance of evidence that the amount in controversy exceeds $75,000 based on approximately $20,000 in damages and $60,000 in attorneys' fees.").

58. Multiple courts have confirmed that attorneys' fees in wage and hour cases asserting individual claims often exceed $100,000. *See, e.g., Martin v. The "Old" Turner Inn*, 2003 WL 22416020 (Cal. Sup. 2003) (awarding $147,610 in attorneys' fees and costs in a single plaintiff

wage and hour case in which the plaintiff recovered $49,508 in damages); *Cappuccio v. Pepperdine University*, Case. No. 13- cv-3125-DSF-AJWx, 2014 WL 12573366, at *5-6 (C.D. Cal. Sept. 29, 2014) (awarding $102,153.75 in attorneys' fees and costs in a single plaintiff case for violations of the Fair Labor Standards Act in which plaintiff recovered $120,000 in economic damages).

59. Also, multiple courts have recognized that "an attorney handling an individual wage-and- hour case 'typically spends far more than 100 hours on the case'." *Swans*, 2023 WL 196918, at *3 (quoting *Hernandez v. Aramark Food & Support Servs. Grp., Inc.*, No. 20-CV-03633-EJD, 2020 WL 5496172, at *5 (N.D. Cal. Sept. 11, 2020) (quoting *Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2010 WL 1526441, at *4 (N.D. Cal. Apr. 15, 2010, at *5) (emphasis added); *see also Lippold*, 2010 WL 1526441, at *4 (asserting that a "typical individual wage and hour case" can generate fees in excess of $100,000 when using a $400 per hour rate for attorneys' fees to meet the amount in controversy); *Hernandez v. Aramark Food & Support Servs. Grp., Inc.*, No. 20-CV-03633-EJD, 2020 WL 5496172, at *5 (N.D. Cal. Sept. 11, 2020) (same); Sasso v. Noble Utah Long Beach, LLC, No. CV 14-09154-AB (AJWx), 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours.").

60. Here, in a public court filing in the Los Angeles County Superior Court in February 2025, Plaintiff's counsel, Blackstone Law, APC, represented in a sworn declaration that the law firm's attorneys' hourly billing rates are between $695 and $1,150 for wage and hour cases. Courts have estimated attorneys' fees in employment cases using figures of 100 to 300 hours at $300 per hour. *See Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) ("This Court and others have held that a reasonable rate for employment cases is $300 per hour."); *Garcia v. ACE Cash Express, Inc.*, 2014 WL 2468344, at *5 (C.D. Cal. May 30, 2014) (accepting estimate of attorneys' fees at rate of $300 per hour). Even though Plaintiff's counsel's actual hourly rate for the type of work to be performed in this action is $695 at a minimum, Defendants can conservatively calculate that Plaintiff's requests for attorneys' fees in her Complaint place at least $45,000 in controversy with just 150 hours of work at $300 per hour. Defendants expect Plaintiff's counsel will spend far in excess of 150 hours on this matter given anticipated pre-discovery

litigation, including conferences on various responsive motions, stipulations on briefing schedules regarding the same, scope, joint employer issues, and briefing various responsive motions.

61. Thus, assuming approximately 150 – 300 hours of work on this matter, and estimating an minimum billable rate for Plaintiff's counsel of $300 per hour (despite the actual $695 per hour billable rate) amounting to approximately $45,000-$90,000 Plaintiff's request for attorney's fees potentially places $75,000 in controversy for attorney fees alone. Notwithstanding, even conservatively applying the amounts above, the amount of controversy is still met.

| **Claim** | **Amount in Controversy** |
|---|---|
| Unpaid Minimum Wages | $6,076 |
| Unpaid Overtime | $12,206.25 |
| Meal Periods | $9,765 |
| Rest Periods | $9,765 |
| Untimely Wages | $6,000 |
| Wage Statements | $2,950 |
| Untimely Final Wages | $4,440 (if employment ended) |
| Attorneys' Fees | $45,000 - $90,000 |
| Total | **$91,762-$141,202** |

62. In short, the amount of controversy requirement for traditional diversity jurisdiction is satisfied. Even without considering the fact that Plaintiff's damages will continue to grow as she is a current employee and Plaintiff's two claims for business expenses and Business & Professions Code claim, the amount in controversy in this case substantially exceeds $75,000 as reflected in the table above. Although this is the amount in controversy, Defendants, of course, dispute that Plaintiff is entitled to recover anything by virtue of this action.

## VII. <u>NO JOINDER REQUIRED</u>

63. Unnamed, or doe defendants are not required to join in removal. *Emrich v. Touche Ross & Co.,* 846 F.2d 1190 n.1 (9th Cir. 1988) (doe defendants need not join in removal.)

## VIII. <u>VENUE</u>

64. Venue is proper in this Court because this action was originally filed in Alameda Superior Court, located within this District of the Court. See 28 U.S.C. §§ 84(a), 1441(a).

///

**IX. NOTICE OF REMOVAL**

65. Following the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of such filing will be given by the undersigned to Plaintiff's Counsel of Record and a copy of the Notice of Removal will be filed with the Clerk of the Alameda Superior Court.

**X. PRAYER FOR REMOVAL**

66. WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of the State of California, County of Alameda, to the United States District Court of the Northern District of California.

Dated: November 26, 2025

FISHER & PHILLIPS LLP

By: ______________________

GRACE Y. HOROUPIAN
KRISTINA NOEL BUAN
Attorneys for Defendants
EVERGREEN ALLIANCE GOLF LIMITED, L.P. and ARCIS GOLF LLC

## CERTIFICATE OF SERVICE

I, the undersigned, am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 2050 Main Street, Suite 1000, Irvine, California 92614.

On the date below I served the foregoing document entitled **DEFENDANTS EVERGREEN ALLIANCE GOLF LIMITED, L.P. AND ARCIS GOLF LLC'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(A)(1), 1441 AND 1446** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Ryan A. Quadrel<br>Joseph O. Marshall<br>Shelby L. Miner<br>BLACKSTONE LAW, APC<br>8383 Wilshire Blvd, Suite 745<br>Beverly Hills, CA 90211 | *Attorneys for Plaintiff, LAURA CONANT*<br><br>Phone: (310) 622-4278<br>E: rquadrel@blackstonepc.com<br>E: jmarshall@blackstonepc.com<br>E: sminer@blackstonepc.com |

☒ **[by MAIL]** - I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☐ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

☐ **[by FEDERAL EXPRESS]** - I am readily familiar with the firm's practice for collection and processing of correspondence for overnight delivery by Federal Express. Under that practice such correspondence will be deposited at a facility or pick-up box regularly maintained by Federal Express for receipt on the same day in the ordinary course of business with delivery fees paid or provided for in accordance with ordinary business practices.

☐ **[by PERSONAL SERVICE]** - I caused to be delivered by messenger such envelope(s) by hand to the office of the addressee(s). Such messenger is over the age of eighteen years and not a party to the within action and employed with Attorney Service Name and Address .

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 26, 2025, at Irvine, California.

Paula Sanchez